IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SUSAN ELAINE LASHER,                )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )   Civil Action No. 15-26-E
                                    )
CAROLYN W. COLVIN, ACTING           )
COMMISSIONER OF SOCIAL SECURITY,    )
                                    )
        Defendant.                  )

O R D E R

AND NOW, this 30th day of December, 2015, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 13) filed in the above-captioned matter on July 27, 2015,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 11) filed in the above-captioned matter on June 18, 2015,

IT IS HEREBY ORDERED that said Motion is GRANTED. Accordingly, this matter is hereby remanded to the Commissioner of Social Security ("Commissioner") for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I.  **Background**

Plaintiff Susan Elaine Lasher filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, proactively effective to May

1

1, 2012, claiming that she became disabled on May 1, 2010,[1] due to bipolar disorder, high cholesterol, depression, migraines, and sleep deprivation. (R. 13, 138-46, 190). On October 1, 2012, she also filed a claim for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. (R. 147-77).

After being denied initially on June 14, 2012, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on August 23, 2013. (R. 87-96, 100-01, 31-58). In a decision dated September 16, 2013, the ALJ denied Plaintiff's request for benefits. (R. 13-26). The Appeals Council declined to review the ALJ's decision on November 20, 2014. (R. 1-8). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether

---

[1] Plaintiff's counsel later requested that her prior Social Security claims, which had been denied at the initial application level on November 1, 2011, be reopened. While it is not entirely clear from the record whether this occurred, at the hearing, Plaintiff's claim was construed so as to allege disability beginning December 31, 2008. (R. 242, 13). The matter should be clarified on remand.

2

the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Commissioner of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment

3

that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a),

4

416.921(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. See 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant bears the burden of demonstrating an inability to return to his or her past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. §§ 404.1520(g), 416.920(g). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the

cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. §§ 404.1523, 416.923.

### III. **The ALJ's Decision**

In the present case, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through December 31, 2014. (R. 15). Accordingly, to be eligible for DIB benefits, Plaintiff had to establish that she was disabled on or before that date. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claims for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since December 31, 2008, the alleged onset of disability. (R. 15). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had several severe impairments, specifically, left wrist carpal tunnel syndrome and ganglion cyst; obesity; intrinsic sphincter deficiency with incontinence; migraine headaches; osteopenia; insomnia; learning disability; and major depressive disorder.[2] He further found that Plaintiff's alleged

---

[2] The ALJ further noted that, although Plaintiff had not been diagnosed with an anxiety disorder, he considered the reported anxiety symptoms as a component of Plaintiff's depression and accommodated them. While Plaintiff argues that the ALJ is

6

hypermetropia, astigmatism, presbyopia, narrow angle vision, nuclear sclerosis, optic atrophy, sinusitis, and kidney stones did not constitute severe impairments. (R. 15-16). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 16-19).

The ALJ found that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she is limited to never climbing a ladder, rope, or scaffold, and to only occasionally climbing ramps and stairs; that she is limited to only occasional balancing, stooping, kneeling, crouching, or crawling; that she is limited to frequent feeling with the non-dominant hand, but with no other manipulative limitations; that she must avoid concentrated exposure to vibration; that she must avoid all exposure to unprotected heights, dangerous machinery, and like workplace hazards; that she is limited to understanding, remembering, and carrying out simple instructions and performing simple, routine tasks; that she is limited to no work-related contact with the public, only occasional and superficial interaction with co-workers, and no more than occasional supervision; and that she is limited to a low stress work environment, which means no production rate pace work, but

---

incorrect that she was not diagnosed with an anxiety disorder, the issue is ultimately not relevant to the Court's holding.

rather, goal oriented work, with only occasional and routine change in the work setting. (R. 19-24). Based on this RFC, Plaintiff established that she is incapable of returning to her past employment; therefore, the ALJ moved on to Step Five. (R. 24). The ALJ then used a vocational expert ("VE") to determine whether or not there were a significant number of jobs in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including packer, mail clerk, and office helper. (R. 25, 55). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 25-26).

## IV. **Legal Analysis**

Plaintiff argues that the ALJ's mental RFC finding is insufficient because he failed to properly evaluate the medical and nonmedical evidence. While the Court does not necessarily fully agree with Plaintiff's assertions, it does agree that further discussion is needed in regard to the ALJ's RFC finding, specifically in regard to the weight afforded to the opinion of Plaintiff's treating psychiatrist. Accordingly, the Court finds that substantial evidence does not support the ALJ's decision, and it will remand the case for further consideration.

On October 23, 2012, Plaintiff's treating psychiatrist, Asha Prabhu, M.D., prepared a psychiatric/psychological impairment questionaire, wherein she offered her opinion as to Plaintiff's occupational limitations. (R. 496-503). As part of this opinion, she found that Plaintiff was markedly limited in her ability to maintain attention and concentration for extended periods and her ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. She further opined that Plaintiff would likely be absent from work about 2-3 times per month as a result of her impairments. (R. 499-500, 503). While, overall, the ALJ gave some weight to Dr. Prabhu's opinion, he rejected the opinions set forth above, finding them to be overestimates of Plaintiff's limitations, and did not expressly include them in Plaintiff's RFC.[3] (R. 23). While the ALJ gave several reasons for doing so,

---

3   RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001). See also 20 C.F.R. §§ 404.1545(a), 416.945(a). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705). See also S.S.R. 96-8p,

one was that the limitations discussed above were inconsistent with Dr. Prabhu's prognosis of Plaintiff's condition as "fair to good." (Id.). Unfortunately, the ALJ appears to have misread the record in making this determination.

As Plaintiff points out, Dr. Prabhu's prognosis appears not to state "fair to good," but rather "fair to poor." (R. 496). To be sure, it is not easy to read the handwriting, but the Court agrees with Plaintiff that Dr. Prabhu appears to have written "poor" rather than "good."[4] While this is clearly a good faith mistake, the fact remains that an ALJ "'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). Although, as noted, the ALJ's belief that Dr. Prabhu's prognosis that Plaintiff's condition was fair to good was only part of his analysis, it was important enough to be discussed as a stated reason for rejecting certain of Dr. Prabhu's opinions. The Court cannot assume that the correct reading of the prognosis would not change how the ALJ would review Dr. Prabhu's rejected opinions,

---

1996 WL 374184 (S.S.A.), at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

[4] At the very least, additional clarification from Dr. Prabhu would be warranted to the extent that the ALJ does believe that the word is "good," because, at best, it is unclear.

particularly in light of the significant weight generally afforded to the opinions of a claimant's treating physician. See Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429.

Accordingly, remand is required to allow for further discussion as to the ALJ's rationale for rejecting Dr. Prabhu's opinions regarding Plaintiff's ability to maintain attention and concentration for extended periods and her ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, as well as her opinion that Plaintiff would likely be absent from work about 2-3 times per month as a result of her impairments.  By no means is the Court suggesting that the ALJ is required to simply adopt these opinions, and it emphasizes that it is not suggesting that any specific additional limitations must be included in the RFC. It is the need for further explanation that mandates the remand here.

## V.  Conclusion

In short, the record simply does not permit the Court to determine whether the ALJ's formulation of Plaintiff's RFC and his finding that Plaintiff is not disabled are supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this

11

case.  The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

                                        <u>s/Alan N. Bloch</u>
                                        United States District Judge

ecf:    Counsel of record